WALSER et al. v. SCOTT.

(Court of Appeals of District of Columbia. Submitted November 17, 1922. Decided January 2, 1923.)

No. 1522.

2. Patents ⟾90(3)—Delay in filing application does not defeat rights, if dili-
to senior.

In interference proceedings, an applicant, who filed his application after patent had been issued to the other party, has a heavy burden.

2. Patents ⟾90(3)—Delay in filing application does not defeat rights, if dili-
gence was exercised before others entered field.

Delay in constructive reduction to practice by filing an application does not establish want of diligence on the part of the applicant, if he was reasonably active just before the other party entered the field, and up to the time of his actual reduction to practice.

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Patents ⬨⇒90(3)—Reduction to practice under contract held to establish diligence.**

Where an invention related to a 'large and complicated printing press, which the inventor had contracted to sell to a publisher, he was not chargeable with want of diligence in actual reduction to practice, because he delayed constructing the press until the publisher had erected a building in which to install it, instead of constructing the press immediately and then dismantling it to ship to the purchaser, especially where he published an advertisement containing a description of the press, and offered to construct it for any who desired it.

4. **Patents ⬨⇒90(3)—Diligence depends on circumstances in each case.**

There is no hard and fast rule by which to determine the question of diligence, but each case must depend on its own circumstances.

5. **Patents ⬨⇒87—Evidence held not to show abandonment of invention.**

Evidence in interference proceedings *held* not to show abandonment of the invention by the party who first conceived it, though he did not file an application therefor until after patent had been issued to the other party.

Appeal from the Commissioner of Patents.

Interference proceedings between Grace L. Walser, administratrix of the estate of Joseph J. Walser, deceased, and others, and David John Scott. From a decision awarding the invention to Scott, Walser and others appeal. Affirmed.

John L. Jackson, of Chicago, Ill., for appellants.
Axel V. Becker, of New York City, for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

SMYTH, Chief Justice. The Commissioner of Patents found for Scott in an interference proceeding involving an invention relating to improvements in printing presses. From the 18 counts which constitute the issue, we select count 2 as an example:

In a printing press, the combination of two press sections arranged in longitudinal alignment with each other, a third press section arranged in alignment therewith, a line of shafting extending longitudinally of said press sections, connections between said shafting and said press sections, means located between said first-named two sections and said third section for driving said shafting for operating said press sections, angle bars over which the webs printed by said sections may be turned and associated to run longitudinally of said sections, and means located between said first-named two sections and said third section for giving the associated webs from said sections a longitudinal central fold.

The decisions of the Examiner of Interferences and the Board of Examiners were also in favor of Scott, and therefore we have a case in which the three tribunals of the Office ruled against the appellants.

[1] The contest is between the application of Scott, filed February 2, 1917, and a patent granted to Walser and Lang September 12, 1916, on an application filed by them in September of the previous year. Consequently, Scott has a heavy burden resting on him. Braun v. Wiegand, 49 App. D. C. 193, 262 Fed. 647. Walser and Lang assigned their interest under the patent to the Goss Printing Press Company (to which we shall hereafter refer as the Goss Company).

⬨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The chief question involved relates to the diligence of Scott in reducing to practice. Walser and Lang took no testimony. Therefore they are limited for conception and reduction to practice to September, 1915. Scott adduced testimony tending to uphold his contentions. It is not contradicted, but the inference to be drawn from it is in sharp dispute. He asserts conception of three of the counts in 1909 and of the rest in 1910, and says he reduced to practice three of the counts in 1910, one in 1912, and the remainder in 1917.

Walter Scott & Co., a large manufacturer of printing machinery, of which Scott was general manager, and through which he did business, and the Goss Company, were competitors in the early part of 1914 for the sale of printing presses to the Evening News Association of Detroit (called herein the Association). June 10, same year, the Scott Company obtained the contract. Some of the presses provided for in it were installed in March, 1915. In the same contract the Association was given the option of purchasing four additional presses, three of which, designated as a multi-unit triple octuple press, embrace all the issues of this interference, which option was to be exercised before January 1, 1915. The contract, together with the specifications forming part of it, and certain other undisputed testimony disclose that Scott had at that time fully conceived the invention. About this there is no question. So that he is entitled to June, 1914, at least, for conception of all the counts.

The option just mentioned was accepted in March, 1915, about two months after the time fixed in the contract, but on condition that the presses were not to be shipped until a new building, to be erected within a reasonable time by the Association, should be completed to receive them. The Association advised the Scott Company in November following that the contract for the new building had been made, and that according to its terms the building was to be completed within a year. At the same time the Association directed the Scott Company to proceed immediately with the manufacture of the presses. It entered upon the work at once, commenced shipment of parts in December, 1916, and in January following completed the installation of the presses in the new building, while the latter was unfinished.

The triple octuple press, at the time it was installed, was among the largest of its kind in the world. As we have just seen, it was necessary for the Association to construct a new building to receive it. The factory of the Scott Company, although having few equals in its facilities for the construction of presses, was not sufficiently large for the erection of this one. It is 93 feet 9 inches long and 16 feet wide, and cost at pre-war prices $126,000, which did not include a motor and control necessary for its operation, the cost of which was $27,000. It took three railroad cars to convey each octuple from the factory to Detroit, and nine to carry the whole machine. One year and two months were consumed in the building of the press, and eight months in the installation of it.

[2] Considering these circumstances, was Scott diligent? The Goss Company says he was not, and insists that any time after June, 1914, when the contract for the sale of the presses was made, he could have

filed his application and thus effected a constructive reduction to practice, and that his failure to do so before the Goss Company's assignors entered the field in September, 1915, establishes conclusively his negligence. We cannot accede to this. It is true Scott could have filed his application, as stated by the Goss Company; but the fact that he did not do so does not establish want of diligence if he was reasonably active just before the assignors of the Goss Company conceived and up to the time of his actual reduction to practice. Yates v. Huson, 8 App. D. C. 93. Suppose Scott had been diligent during all the period between the date of his conception and the time when he actually reduced to practice: Could it be said that nevertheless he is not entitled to priority because he did not file his application soon after the disclosure in June, 1914? He had his choice of either constructively or actually reducing to practice. Negligence with respect to the one method would not prove negligence as to the other.

[3] We now come to consider whether or not what he did towards actual reduction to practice was enough to satisfy the law. To actually reduce to practice it would be necessary to build and erect a press and provide a motor to operate it. This would involve a great outlay of money and loss of time, and, after having done it, the machine would have to be dismantled before shipping it to Detroit. Six months before the Goss Company entered the field, Scott had a contract from the Association, a responsible concern, for the purchase of the press. If he had gone to work upon it then, it would have taken him a year to construct it. The only reason he did not commence work at that time was the purchaser's want of a building sufficiently large to receive it. The purchaser agreed to erect such a building within a reasonable time, and, considering war conditions, proceeded to do so with proper haste. In due time Scott started work on the press, delivered it in Detroit, and established it in its new home, even before the building was completed. Every act which the Association did in making the contract to purchase, in carrying it out, and in constructing the building, is a step proper to be considered in determining whether or not Scott was diligent. His contract required the doing of these things; and they were all efforts towards the actual reduction to practice of the press. The mere fact that to reduce it to practice was a work of magnitude might not be sufficient to excuse his delay if he did not have the contract, but with the contract we believe that he was fully justified in waiting. He had but two courses before him, viz. to wait or to erect and operate the press at his factory. He chose the first, and, doing so, did what any prudent business man would have done under like circumstances.

[4] Besides, on July 4, 1914, about 3 months after he made the contract with the Association, he advertised the press for sale in a trade paper, thereby making known to the public his readiness to build it for any person who desired it. He was ready and willing to give to the public the benefit of his invention whenever it was practical for him to do so. The advertisement appeared 14 months before the assignors of the Goss Company conceived the invention. In the same issue of the paper the Goss Company advertised one of its presses. It

is fair to presume that both the inventors and the Goss Company knew of Scott's advertisement, and consequently of his attitude. In view of this, it cannot be said that they were in any wise misled by his conduct. To take from Scott the invention, and give it to one who had not conceived it until 14 months after he had entered into a contract for its sale, which contract fully described it, would be to sacrifice substance to form and to work a grave injustice to Scott. There is no hard and fast rule by which to determine the question of diligence. Each case must depend upon its own circumstances. O'Connell v. Schmidt, 27 App. D. C. 77.

[5] It is urged by appellants that Scott abandoned his invention, but we think a sufficient answer to this is found in the facts which we have related. There is nothing to show that he either abandoned or intended to abandon it. Many cases are cited by the appellants in support of their position. They are all distinguishable in their facts from this case. It would take up unnecessarily a good deal of space to point out the ground upon which they may be differentiated. That has been done quite satisfactorily by the Assistant Commissioner of Patents in his opinion, and we do not think it necessary to repeat his work.

The Commissioner's decision is affirmed.

Affirmed.